## Clifton Foster v. Department of Social Welfare

[376 A.2d 741]

No. 10-76

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed June 7, 1977

*William R. Brooks*, Vermont Legal Aid, Inc., St. Albans, for Plaintiff.

*M. Jerome Diamond*, Attorney General, and *Georgiana O. Miranda*, Assistant Attorney General, Montpelier, for Defendant.

**Larrow, J.** The Department of Social Welfare, as appellant, challenges an order of the Human Services Board reversing a departmental decision and reinstating, retroactively, the allowance for property taxes included in petitioner's budget for purposes of the Aid to Needy Families with Children Program (ANFC). It also challenges a provision of that order establishing "protective" (*i.e.*, direct) payments to the town involved. It claims that, since claimant has let his property taxes go unpaid, their inclusion in his budget violates its Regulation 2211.3, requiring housing allowances to be budgeted "as paid." Both the Board and the claimant seem to concede the violation of the regulation in question, but view the regulation as contrary to those promulgated by the Department of Health, Education and Welfare (HEW) requiring money payments to be in cash or its equivalent, without restrictions imposed by the agency upon use of the funds by the individual. 45 C.F.R. § 234.11(a). We do not reach a scrutiny of the claimed conflict, which would, of course, require that the state

regulation yield to the federal, because participation in the federal program mandates conformity with the Social Security Act and regulations promulgated thereunder. *King* v. *Smith*, 392 U.S. 309, 317 (1968). In our view, the policy adopted by the department is without foundation in its own regulations, and results from a strained, unwarranted interpretation of its Regulation 2211.3, and of the term "as paid" contained therein.

The factual situation here involved is fairly simple. The claimant, who has a wife and three children, had his ANFC budget reduced by some $23.00 per month, and his total grant by about $19.00, when the department discovered that he had not paid his property taxes for two years. As he was buying a home, these taxes had been included in his shelter costs, along with his mortgage payments. At the time, the grant was calculated upon 80% (later reduced to 73%) of the budget, so that, to make his cash flow requirements cover his living expenses the claimant resorted to (a) borrowing from relatives, and (b) letting his tax payments go into arrears. It is not suggested to us, nor can we perceive, how any more prudent course was open to him. The department based its grant reduction upon its reading of its own Regulation 2211.3, relating to budgeting of housing allowances "as paid." It concedes that this practice, if continued as a policy, would result in a continuing diminution of grant until virtually no shelter allowance remained, as each successive reduction for nonpayment of shelter costs caused a greater inability to pay those costs when they accrued. It reads that regulation to require either the actual payment of the budgeted item or its exclusion from the budget, despite the prohibition of restrictions upon use of money payments contained in the HEW regulation above referred to.

Regulation 2211.3 is quite lengthy, and not all of it has application to the issue presented. In its pertinent portion, it reads as follows:

> Housing allowances shall be budgeted "as paid" not to exceed the following maximums:

MAXIMUM MONTHLY ALLOWANCE

| HOUSING TYPE | OUTSIDE CHITTENDEN COUNTY | CHITTENDEN COUNTY ONLY |
|---|---|---|
| Home ownership | | |
| Unfurnished rental (no heat or utilities) | | |
| Heated rental | | |
| Rental with utilities | (Dollar amounts omitted) | |
| Heated rental (with utilities) | | |
| Furnished rental (with or without heat and/or utilities) | | |

Rental housing shall qualify as a furnished rental when essential items of furniture for eating and sleeping are provided. A rented mobile home shall qualify as a furnished or unfurnished rental by the same criteria.

Recurring shelter expense for maintaining a home is included (as paid) up to the maximums indicated. The expense for shelter when shared may be included based upon the client's cost not to exceed the maximums.

We have repeatedly held that the primary rule of construction is to give language its plain, ordinary meaning. *Camp* v. *Department of Motor Vehicles*, 131 Vt. 536, 310 A.2d 35 (1973). Doing so here leads to a result much less complex than that contended for by the department, and much more consistent with the general policy of keeping families together in the home unit wherever possible. The words "as paid" seem to us to indicate, not the actual making of the payment, but the form which the housing expense consists of. In other words, the allowance is budgeted (within the maximums) according to the form in which the obligation is incurred, *i.e.*, home ownership, as here, or furnished or unfurnished rentals, with or without heat and utilities, precisely as the regulation reads and without venturing into strained construction. So construed, there is no

conflict with the HEW regulation prohibiting restrictions on cash payments.

Nor are we convinced by the department's specious argument that it has a right to remove an item from the budget when it is demonstrated that the need no longer exists, as when a person leaves the household. Whatever the force of that general principle, it has no application here. The "need" for tax payment still exists, even though not currently met. The liability continues to accrue, and it is a secured one of first priority. The need still exists, and it is being met by the claimant through the only resources he has available, *i.e.*, borrowing from relatives and constantly expending, for current purposes as the taxes accrue, his equity in the home. With only a stated percentage of his budgeted needs being supplied by the department, we can see no other course of action, short of deprivation, open to him. The department's argument that the claimant is not the loser under this procedure simply is not accurate; his equity in his home diminishes with every unmet tax payment. He "loses" even more under this procedure than he would by nonpayment of other bills; the first lien of property taxes makes them the most collectable of all obligations incurred.

We cannot, however, affirm that part of the Board's order requiring that protective (direct) payments be made to the town in question. Whatever the situation had the department consented to this procedure, it is quite clear that it did not. Absent such consent, and consistent with the general purpose of preserving wherever possible the integrity and operation of the family unit, there is a requirement, before protective payments are authorized, that the inability to manage be "severe." This requirement is both state and federal. WAM 2156; 45 C.F.R. § 234.60(a)(2). And the solution must be "temporary." WAM 2156.4; 45 C.F.R. § 234.60(a)(10)(ii). In our view the management involved here follows the only practical course, demonstrating no inability to manage whatever. And the order, as made, has no temporary aspects. Also, under state regulations, protective payments are to be implemented only in cases where the majority of available income is from the assistance payment, not here the case. WAM 2156.1. Absent these conditions, money payments are a prerequisite for federal financial participation, and restrictions by the agency on use of funds by the individual are prohibited. 45 C.F.R. § 234.11(a). Forfeiture of federal

participation is of course possible, but we see no indication in the decision below that this result was either contemplated or desired. That part of the Board's order directing a protective payment of taxes must be vacated.

*So much of the December 12, 1975, order of the Human Services Board as orders payment on a protective basis is vacated, and the order is, in all other respects, affirmed.*